UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

DOREATHA A. JORDAN,

                Plaintiff,

-against-

NATIONAL POSTAL MAIL HANDLERS
UNION, LOCAL 300; UNITED STATES
POSTAL SERVICE,

                Defendants.
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**07 CV 606 (DLI) (LB)**

FILED
IN CLERK'S OFFICE
US DIST   COURT E.D.N.Y
★   DEC 28, 2007   ★  rec'd
P.M.
TIME A.M.

**BLOOM, United States Magistrate Judge:**

Plaintiff brings this action alleging that defendant, National Postal Mail Handlers Union, Local 300 ("Union"), breached its duty of fair representation. The Union moves to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Honorable Dora L. Irizarry referred this motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that the Union's motion should be granted and plaintiff's complaint should be dismissed.

## BACKGROUND

Plaintiff worked for the United States Postal Service ("USPS") from January 1999 through May 2005. Plaintiff brings this action alleging that the Union entered into two settlement agreements with the Postal Service that violated the Union's duty to fairly represent her.[1] The facts surrounding

---

[1] Plaintiff instituted this action *pro se* and subsequently retained counsel. Upon counsel's request, leave to file an amended complaint was granted on July 3, 2007. Defendant's motion addresses the facts raised in plaintiff's amended complaint. See Docket entry 26.

1

the settlement agreements are not in dispute. In the first settlement, the Union filed grievances on behalf of 148 employees, including plaintiff, challenging the abolishment of certain mail handler positions ("Abolishment grievance"). Amended Complaint at ¶ 20, 21. In July, 2003, the Union prevailed in its challenge and the settlement agreement provided that all current and former employees affected by the abolishment would be compensated. Id. ¶ 22. The Union agreed that payments would first be made to current USPS members and thereafter, to former employees, such as plaintiff. Id. ¶ 23. Plaintiff was told about this payment schedule in a letter from the Union to plaintiff dated August 24, 2006:

> you are entitled to and will receive your portion of the Abolishment case once all of the Mailhandlers who are currently on the rolls have been paid. This agreement not only includes you but any former Mailhandler who has since retired, resigned or transferred. Unfortunately, I can not yet give you a date for this payment because we are still working on completing Tour I and Tour 3.

See Amended Complaint at ¶¶ 24, 25; August 24, 2006 letter annexed to plaintiff's complaint. To date, plaintiff alleges that she has not received any compensation from this settlement. Id. ¶ 27.

In the second settlement, the Union filed grievances challenging the use of casual employees and employees in other crafts to perform mail handler work ("Cross-Craft grievance"). Id. at 28. The Union again prevailed. This settlement agreement provided that only current USPS employees would be compensated. Employees who were separated from the Postal Service at the time of the settlement (such as plaintiff) were not entitled to payment as part of this settlement agreement. Id. ¶ 30, 31. The Cross-Craft settlement terms were explained to plaintiff in a letter from the Union dated September 5, 2006 which states "only Mailhandlers who are currently on the rolls will be compensated. As previously stated no retirees, no transferees, or persons who have resigned or been removed will be compensated." The letter also explained that plaintiff was included in the

2

Abolishment award only "because the Union filed a[n] individual case on your behalf." Id. ¶ 32; September 5, 2006 letter annexed to plaintiff's complaint.

Plaintiff argues that Local 300 has treated her, as a former employee, less favorably than employees still on the rolls; that this treatment is arbitrary, unreasonable, discriminatory and in bad faith and constitutes a willful breach of its duty of fair representation. Id. ¶ 36. The Union has moved to dismiss plaintiff's complaint for failure to state a claim and plaintiff has opposed the motion.

## STANDARD OF REVIEW

Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all the facts alleged in the complaint and must draw all reasonable inferences in favor of the nonmoving party. Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001). However, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, —U.S.—, 127 S. Ct. 1955, 1974 (2007). Thus a motion to dismiss pursuant to Rule 12(b)(6) should be granted if the allegations in a complaint do not "raise the right to relief above the speculative level." Id. at 1965.

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). As all of

the documents relied on by plaintiff are either annexed to her complaint or referenced in her amended complaint, the Court considers these documents in deciding the instant motion.

## DISCUSSION

"Although formally comprised of two separate causes of action, a suit in which an employee alleges that an employer has breached a CBA [Collective Bargaining Agreement] and that a union has breached its duty of fair representation by failing to enforce the CBA is known as a hybrid § 301/fair representation claim." Acosta v. Potter, 410 F. Supp.2d 298, 308 (S.D.N.Y. 2006) (internal citations omitted). "To establish a hybrid § 301/DFR [duty of fair representation] claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." White v. White Rose Food, 237 F.3d 174, 178-79 (2d Cir. 2001).

The Court turns first to the question of whether the Union breached its duty of fair representation ("DFR") to plaintiff. "A claim for breach of the duty of fair representation consists of two elements." White, 237 F.3d at 179. In order to establish "a breach of duty of fair representation the union's conduct must, first, have been arbitrary, discriminatory or in bad faith." Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003) (internal citation omitted); see also Marquez v. Screen Actors Guild, Inc., 499 U.S. 65 (1991) ("a union breaches its duty of fair representation when its conduct . . . is arbitrary, discriminatory or in bad faith"). "'[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 283 (2d Cir. 2005)

4

(quoting Airline Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991)). The burden on a plaintiff to establish that a union breached its duty of fair representation is onerous:

> tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach. . . [P]roof of mere negligence or errors of judgment is insufficient. . . . As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage.

Barr v. United Parcel Serv., Inc., 868 F.2d 116, 129 (2d Cir. 2003). "Second, if plaintiffs establish the first element of a DFR claim, they must then also prove that there was a causal connection between the union's wrongful conduct and their injuries." White, 237 F.3d at 179.

The Union filed an individual case on plaintiff's behalf which is why she will receive an award in the Abolishment settlement. As noted, "[a] union breaches its duty of fair representation if its actions can fairly be characterized . . . [as] wholly arbitrary, discriminatory, or in bad faith." Sim v. New York Mailers' Union Number 6, 166 F.3d 465, 471 (2d Cir. 1999) (internal citations omitted). Here, the Union and Postal Service agreed upon distribution of the Abolishment settlement monies to current employees first, and thereafter to employees no longer working for the Postal Service. As explained in the Union's August 24, 2006 letter, plaintiff is entitled to her share of the award but only after current employees are paid. While plaintiff may be dissatisfied with how long it has taken to distribute the award, the distribution method in no way appears irrational, much less arbitrary, discriminatory or in bad faith and as such plaintiff's claim does not constitute a breach of the Union's duty of fair representation.[2]

Similarly, plaintiff has not alleged facts that the Union breached its duty with respect to the

---

[2] Although the Court finds no breach by the Union, it seems reasonable that plaintiff could be given a time frame within which she could expect to receive her share of the settlement award.

Cross-Craft award. It is undisputed that only current employees were included in the terms of the award. This does not violate the Union's duty to plaintiff. The National Labor Relations Board ("NLRB") has held that without evidence to support a finding of arbitrary, discriminatory or bad faith conduct, union administered settlement agreements that only provide compensation to current employees, regardless of which employees were actually impacted by the grieved conduct, does not constitute a breach of the Union's duty of fair representation. Steelworkers Local Union No. 2869 (Kaiser Steel Co.), 239 NLRB 982, 1978 WL 8396 at *2 (N.L.R.B. December 22, 1978) (Union's agreement limiting the share in settlement proceeds to all employees employed at the time of grievance and who were still employed at the time of settlement is not arbitrary or unreasonable providing there existed "good faith and honesty of purpose in the exercise of [the Union's] discretion"); see also National Association of Letter Carriers, AFL-CIO Branch 1227, Cases 16-CB-6815, 2005 WL 2574006 (N.L.R.B. October 7, 2005) (citing Steelworkers Local for the proposition that the Union did not breach its duty of fair representation when it decided that retired employees would receive proportionally less of the settlement proceeds even though the former employees were employed at the time of the grievance); International Brotherhood of Teamsters, Local 101, AFL-CIO, Case No. S-CB-6583, 1991 WL 1283369 (N.L.R.B. January 31, 1991) (citing Steelworkers Local for the proposition that "[t]he fact that the negotiating process leads to a decision which does not meet everyone's perception of fairness" does not render it "arbitrary, discriminatory or in bad faith").

Plaintiff makes no showing that the Union's Cross-Craft settlement agreement which will award only current employees was arbitrary, discriminatory or made in bad faith or that it was not "simply [] one of a series of reasonable, practical administrative determinations regarding those employees entitled to share in the settlement proceeds." Steelworkers Local, 1978 WL at *2. As the

6

onus is on plaintiff to establish that the union breached its duty of fair representation, and plaintiff has not stated a claim for relief that is plausible on its face, this claim should be dismissed.[3]

Plaintiff's claims against USPS should also be dismissed. "Because a union's breach of the duty of fair representation 'is a prerequisite to consideration of the merits of plaintiff's claim against an employer for breach of a CBA, courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily.'" Acosta, 410 F. Supp. 2d at 309 (quoting Young v. U.S. Postal Serv., 907 F.2d 305, 307 (2d Cir. 1990)). As the Union did not breach its duty of fair representation, any claim against the USPS should also be dismissed.

## CONCLUSION

Accordingly, it is respectfully recommended that defendant's motion should be granted and plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to this Report generally waives any further judicial review.

---

[3] As plaintiff has not established the first element in her DFR claim, the Court need not reach the second element, whether there was a causal connection between the Union's wrongful conduct and the alleged injury. White, 237 F.3d at 179.

Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/s/ Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: December 28, 2007
Brooklyn, New York